Good morning. Mark Stashin for the appellant John Boesel. And I'd like to reserve five minutes for rebuttal. May it please the court, Mr. Boesel was the victim of two major thefts of personal property which were insured by State Farm. Only one of those claims is at issue on appeal and was at issue in the trial court. There was some confusion about that because we had to discuss in the big picture the first claim. And I think the trial court got confused and, you know, partly my fault, I guess, for not making it totally clear. But we did submit evidence that claim one was not part of this lawsuit, and State Farm agreed to that. And the trial court's order said that it was unclear, but he also, just to tidy things up, I guess, said that claim one is also dismissed. Claim one is still being adjusted even after all these years. Do we have a final judgment? I mean, do we have jurisdiction, I guess, is the question I'm asking. I think the most proper thing would be to say that the trial court did not have jurisdiction over claim one because it was not submitted. Well, you say he has dismissed that claim. Is it with prejudice, without prejudice? I believe it was with prejudice. So that would be a final judgment from which and if so... To the extent that it was litigated, and State Farm, to their credit, is not taking that as... Let me cut to the chase. Does it make any difference whether we address any of the issues in claim one? Only to the extent that they could at some future date because we're still fighting over values of duck decoys and things like that. They could say at some point the judge has already dismissed this. I'm so worried about antique Chinese neolithic... We are, and I probably should not have gone down this road and spent the time on this. The issue that I'd like you to focus on, the insurance policy has a cooperation clause which State Farm insists that you're insured, your client breached, which voids the entire policy. So isn't that the issue that we need to focus on this morning? Yeah, and to that point, there are various valuations of the jade. And to go back even further, there's e-mails. Two years before the theft, there are e-mails from the rich billionaire industrialist Chinese merchant who was talking about having a tour of the jade through the United States and saying that this is all ancient from the Hong Kong period, 5,000, 6,000 years old. Mr. Basil says how thrilled he is and he believes this is one of the great collections in the world. Two years later, a couple of pieces are stolen, and so Mr. Basil gives his best estimate of the value at $310,000. Later, State Farm gets an expert who says, and they can only go by pictures now because the pieces are gone, they're going by a photograph, and they only gave him one photograph. Out of all the pictures Mr. Basil gave to State Farm, pictures showing him at this museum with armed guards and glass enclosures. They never gave their expert that. They gave him one picture, and he says, I think it's a reproduction. But if it is authentic, then I believe those two pieces are worth $330,000, which is more than Mr. Basil estimated. He estimated $310,000 for those two pieces. So State Farm's expert says, I don't think it's real. The question I have is, what admissible evidence do you have that would create a dispute over material facts regarding the antique jade? I'm not convinced by the argument that you make on the so-called certificate of authenticity. There is no way that document is going to get into evidence based on the lack of foundation. We don't even know who prepared the darn thing, and it's in Chinese. In a bad faith case, everything in their investigative file is admissible. In fact, they have to keep that as part of the department. The document is not coming into evidence at trial counsel. It just isn't admissible under the rules of evidence. So what is the evidence that creates a dispute over material fact here as to the insurance company's determination that your client has failed to cooperate in the adjudication or adjustment of the claim? He's given them the pictures that he had from before where he's at the museum. He's got Philip Liu's statement, who was there present, saying, yes, I saw him give him pieces from this collection. From that alone, the jury can infer that this rich industrialist is not going to give him two pieces of reproduction junk. And it's significant that even their other expert says, even if they're reproductions, they're worth something. State Farm refused to pay them even the lowest. I thought that something was less than $500, and you could go down to Chinatown and get them in one of the junk jewelry stores down there. That's what one of them said. There's various estimates of Mr. Glasser estimated $30,000 for the two pieces if they were not authentic. That's the same problem that I asked you with regard to admissible evidence to create a fact dispute. It sounds to me like the best you've got is an appraiser who will testify, I can't tell you what the value of these pieces are, because all I have is a photograph. And I can tell you what they would be worth if they were genuine, but I don't have any way to make that determination. And if they're not genuine, they're worth less than $500. So what admissible evidence do you have to support the insured's claim that he suffered a $310,000 or $330,000 loss? You've got Mr. Basil's testimony from being there. Basil has testified under oath inconsistently on at least two occasions. On the first time around he says I'm an expert on jade, and on the second time around he says I'm not. So which version of the truth do we believe here? Whether or not he's an expert is a relative term. He says he's not if I believe what he says the second time under oath. He's a person with knowledge more than maybe 90% of the population from studying it, from being over there. Whether or not he considers himself an expert, you know, if somebody's car is stolen, some people think they're an expert on cars, and it's not anything that State Farm relied on, and certainly not to their detriment. What do you do with the fact that he can't even provide identifying or locating information with regard to Mr. Edward Liu, the wealthy billionaire Chinese possessor of the jade? Well, we've presented Philip Liu's statement about the question. I mean, your client says that he and Mr. Liu were good friends and that they spent all this time together and they were in this business venture where they were going to arrange the worldwide tour of Neolithic Chinese jade, and then the insurance company says, well, we'd like to talk to Mr. Liu. Can you give us his phone number and address? Well, I don't have that. Right, and Philip Liu testified that you don't do that in China. It's still a communist country, and we also have Mr. Glasser saying that he was trying to get some information and people would not talk to him on the record because it's dangerous to, in some instances, to be having this jade which could be possessed by the state. And so you have a complicating factor here with it. Do you have an antiquities problem here with the Chinese government? You can't remove this stuff from China? Is that what you're saying? It's kind of complicated from what I understand, but it's culturally. First of all, he's in a business relationship with him on something else, and he said you wouldn't ask Mr. Liu to give you some kind of. That's not the question I asked you. The question I asked you was are you suggesting that the reason that the Chinese witnesses don't want to cooperate with the insurance company is because of a concern that the Chinese government may come after them for removing antiquities from China? Right, similar to that. And there's certainly no evidence that State Farm ever relied on Mr. Basil saying that he was an expert. That was just something that came out later after some discussions. Well, maybe I'm not an expert that would be admissible as an expert at trial, but that really wasn't the issue. State Farm hired their own experts, and they intentionally did not give them all of the information from which they might be able to come up with an opinion that it could be authentic. Well, wasn't one of the experts that State Farm relied on someone who never heard of Mr. Liu and who purports to have the largest collection of Neolithic Chinese jade in the world? Wouldn't you expect somebody who's an expert in Neolithic Chinese jade to have some idea as to where all this jade is located in the world if it's in private collections? That could go to the qualifications of the expert. But, again, that's a jury question. I'm not sure that it is. I mean, the question is can you make out even a prima facie case that you're insured, cooperated with the insurance company. And what I'm hearing from you are a lot of answers that would lead me to conclude that he didn't cooperate. I'm not hearing anything that's sufficient to get to a jury on resolving that issue. You know, he gave them all of the pictures. He gave them his Philip Luce testimony. He gave them the best that he could. But there's never anything that he refused to give them. Refused to give them a locator information on Edward Liu, which I find to be very curious, given the fact that he was purporting to arrange a worldwide showing of these pieces of valuable jade. Well, he produced the e-mails. They could have e-mailed him if they wanted to. But, again, it was not something where he could go to Mr. Liu. In fact, and Philip Luce said, you don't do that to this man. He just gives you another piece. You don't tell him. It would be like if he was trying to sell it on his own. It's just something that is culturally inappropriate. You wanted to save some time. You're down to about three minutes. Okay. Thank you. All right. Let's hear from State Farm Counsel. Good morning, Your Honor. Brian Purcell for State Farm Fire and Casualty Company. Just to briefly address Claim 1, because that was addressed quickly at the start of his conversation. I think what's at issue in that is sort of it is outside the realm of what we're talking about today. Judge Tim Leonard did grant summary judgment as to that claim. But I think that essentially relates to any actions that happened before December, I believe it's 8th, 2011, when he granted that, when he granted summary judgment. But did the district court have jurisdiction over Claim 1? Wasn't that a separate action, Claim 1? Or did the parties agree to set that action aside? State Farm agreed that it would continue to adjust that action. It wasn't really ripe, if you will, for the district court to even rule on it, right? As far as any bad faith that allegedly happened at the time of the district court's ruling, I believe it would have been ripe. And so that's the issue that the district court ruled upon. How could that ruling be made if the adjustment had, if the decision was not final? Because they alleged, and you'd have to go back to the summary judgment briefing, but they did allege that there was bad faith in connection with the handling of that July 2007 claim. And because of that, the judge looked at the evidence and decided there was no bad faith. And I think his ruling stands at least up until when he issued his ruling in December of 2011. That's a very curious answer to a question of whether we have a final judgment. So we're going to divide this case into two pieces of bad faith prior to the time the district court granted summary judgment and then whatever happens thereafter? Is that going to be the subject of a new lawsuit? That I can't answer for you. I don't know if he's going to file another lawsuit or not. I don't think that has really been pursued in the last two years. Well, I have the same question of you that I asked of Mr. Station. Does it really matter? In order to resolve the issues that are before us here with regard to the missing jade pieces, is whatever happens with regard to Claim 1 even relevant? I suppose not. We should probably concentrate really on the jade. I just wanted to address that because that was addressed during his argument. As far as the jade, there's some suggestion that he provided information necessary for State Farm to pay for the jade. The fact is the claim was made in December 2007. Our State Farm did the initial EUO in March 2008, ultimately denied the claim a year and a half later. During that time, Mr. Basil had presented numerous people he said could support his claim about the value of the jade, including himself, Mr. Liu, and Mr. Glasser, and none of those people ended up supporting his claim. But what's important when you look at the policy, it's not just misrepresentation that allows for voiding the policy. It's also concealment. I think that's very important with respect to Mr. Glasser. They had his report before they even filed this lawsuit, which said the jade was worth a maximum of $30,000. And, in fact, the record shows that he actually had looked at the jade before the alleged theft happened and said it likely was not real. So I think it's important that misrepresentation, concealment, and lack of cooperation all play into State Farm's decision on this claim. And when he made that, I'll call it an opinion, I guess, did he have the actual pieces of jade in his presence? That's what plaintiffs testified to in his deposition. So there is an expert, Mr. Glasser, who would be able to offer an admissible opinion that the jade was worth $30,000 or less, if it were authentic. He said if it were authentic, it would be worth it. He wouldn't say for sure that it was. And he thought it likely was not. Was not. And so that's the maximum opinion that they have. And they didn't disclose that until well after the lawsuit was filed. I think probably the most critical thing, which you touched upon earlier, is this Edward Lew issue. Edward Lew has been presented as the authority and expert on all of these pieces throughout the entire claim. State Farm, they spent a year and a half adjusting this claim. No information about Mr. Lew ever came forward, despite the fact that plaintiff says that he went and visited Mr. Lew in February 2010, which was after the lawsuit was actually filed. We never got any information about him. There was no information about the certificate of authenticity, who authored it, anything of that nature. State Farm has to be- Do you even know whether Edward Lew exists? Is he a real person? I haven't Googled him, but I don't know. I don't know. There's never been any information provided about that. All we have is we have e-mails back and forth, which, of course, anything Mr. Lew says in an e-mail is going to be hearsay. It's not admissible as to- You don't even know that it's Mr. Lew who's sending the e-mails, do we? That's correct. Our docket is full of FBI agents taking on the moniker of Internet account holders for communicating with people for all sorts of reasons. Yeah, understood. I agree. Yes, I don't know if Mr. Lew exists. We also don't know what he ever- It seems from the record that he alleges that Mr. Lew gave him these things in 2005 and 2006. Although there's an allegation that Mr. Lew had a lot of money, that's not really- There's no evidence of how much was paid or if anything was paid at all for them. Or if he ever- Well, I suppose we know he received them because Mr. Glasser did look at them at some point, but he gave an opinion that was not favorable to Mr. Basil. And at the end of the day, despite Mr. Basil presenting several people he said could support his claim, he just never did that. Anybody have any other points you want to make? I guess the very last point is just that I commend the Judge Leonard for doing such a thorough job on his opinion. I think that his opinion stands up very well. Zilich is the case that defines bad faith in Arizona. Zilich and Lasma I think are the two cases that are cited. Zilich is a Supreme Court case from 2000. And essentially there has to be an unreasonable position, an annoyingly unreasonable position. And that is far from proven in this case. Your Honors, unless there are any other questions. I don't see any from my colleagues. I have nothing further. Thank you very much. Thank you. Mr. Staten, I think you've got a little under four minutes remaining. As to the existence of Mr. Liu, we have submitted at ER 33 to 61 a number of pictures in his museum with Edward Liu and John Basil. With the glassed exhibits, the armed guards outside there. There's articles about Mr. Liu and his possessions and holdings. There's really, it's the first time I've ever heard a question of his existence. I'm just finding it curious that your client has no way to, can't provide any locator information for this guy other than an e-mail address. Again, it goes to the cultural thing and his ongoing relationship in another venture and not wanting to mess that up with this. So, again, that all goes to the weight that a jury might want to give to the testimony of Mr. Basil having been there before. The e-mails exchange goes to his state of mind. There's certainly no intent to deceive State Farm. I think the question that we have to answer is whether or not what Mr. Basil has been able to supply in response to the numerous requests by State Farm and taking his sworn testimony in an examination under oath on two occasions is sufficient to establish a prima facie case that State Farm's denial of coverage because of a lack of complete cooperation by the insured claimant as a matter of law would permit a jury to determine that the insurer took an unreasonable position and, therefore, engaged the jury. Isn't that the inquiry? That's part of it. And we also have an expert's opinion who worked for State Farm for many years, reviewed the record in detail, and found numerous instances of misconduct and bad faith that is admissible in Arizona clearly. And a couple of Arizona Supreme Court cases have cited expert testimony on the unreasonableness, and we've cited those in the brief, including a 2012 case. Also, when you get back to the contract issue, separate from the bad faith, Arizona has a str... Because I thought bad faith was actually the legal conclusion that the judge had to make. That would be, first of all, Rawlings v. Apodaca. Just give me your... Is that your strongest case? Yes. That was the initial case. And then there's later cases actually quoting testimony. That's in our reply brief starting at page 27. And I go through a couple of pages there about the admissibility. There's really no question about it in Arizona. Also, if I can go back on the contract issue, Arizona has a strong policy against forfeiture of an insurance claim in the absence of prejudice. And that's the Zuckerman case in our reply brief at 11 through 12. And I go through. It's a fairly complicated analysis at some points about whether it's a condition precedent or subsequent. But I've cited a number of cases, including Nevada Supreme Court, Wisconsin Supreme Court, about the rarity of dismissing a case, except in the rarest cases of misconduct. And clearly, Mr. Basil, he spent his own money to hire a private investigator. He wanted his stuff back. He's not intentionally done anything to defraud State Farm. And they certainly have not been prejudiced in any way. They went out, hired their own experts, investigated the claim as if they didn't believe a word that Mr. Basil said. So there was no reliance. I thought couch on insurance suggests that it is the minority view that you have to show prejudice, that Arizona follows the majority rule, which doesn't require that the insurer was prejudiced by the, I'll call it, lack of cooperation by the insurer. I've cited some cases in there that have gone through extensive reviews. I believe it was the Wisconsin Supreme Court case. And they've said by far the vast majority of cases. I'm asking what Arizona law. I thought Arizona followed the majority rule. They do, that you need to show prejudice in there. Yes, and that is the majority view. And then prejudice gets interspersed with materiality of the representations. And that's kind of the analysis that I went through. And by far the majority view is that you have to show any representations who are material, that they relied on it, and they were prejudiced by the representations. Well, wouldn't the insurance company have been prejudiced if it were unable to ascertain the value and the authenticity of the J pieces? If all they did was rely on what Mr. Basil said, there might be some argument. But even then, he hasn't misrepresented anything. If they're authentic, his valuations are real and supported by their experts, if they're genuine. But the difficulty is, you know, generally in an insurance claim there are sale receipts or something to help the insurance company to assess the value. If you have them, then you're obligated to give them. But these were gifts. And it could have been the next day he could have been flying on the plane home and been robbed. That doesn't mean that State Farm is off the hook. You give them the best that you have. But State Farm is not obligated to accept. It's not necessarily bad faith for State Farm to say, this is not sufficient for us to authenticate the value of the pieces. How is that bad faith? That is not. That's separate. That's all they did. But there's numerous other instances of bad faith, including giving their expert only one picture and saying, do you think this is authentic, instead of giving them everything that they have in terms of trying to get a fair and balanced opinion, rather than something that's slanted to their ends. And they have a duty to give equal consideration to Mr. Basil's interests. And clearly they were trying to represent their own interests. And even after they got the certificate. Was there any evidence with regard to whether or not Mr. Basil declared their value to customs when he returned to the United States with these valuable jade pieces? I remember that coming up in an examination under oath. I can't recall what his answer was. We can check that. Okay. I let you go over. You are out of time. I appreciate it. Thank you both. The case is argued as submitted.
judges: Rice, Tallman, Rawlinson